**NISSAN MOTOR COMPANY, LTD.**
d/b/a Nissan Motor Corporation
in USA, Appellant,

v.

**Becky FRY, Lois Burke, and Albertano Aguilera, on behalf of themselves and others similarly situated, Appellees.**

No. 13–99–199–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 17, 2000.

S. Vance Wittie, W. Richard Davis, Strasburger & Price, Dallas, Mark Bradley Blackburn, Strasburger & Price, Austin, Eduardo R. Rodriguez, Alison Kennamer, Rodriguez, Colvin & Chaney, Brownsville. for appellant.

Andrew C. Schirrmeister, III, Schirrmeister Ajamie, L.L.P., Norman Jolly, Houston, Tony Martinez, Martinez, Barrera & Robles, Brownsville, for appellee.

Before Justices DORSEY, HINOJOSA, and CHAVEZ.

## OPINION ON MOTION FOR REHEARING

Opinion by Justice HINOJOSA.

We issued our original opinion in this case on May 25, 2000. Appellant, Nissan Motor Company, Ltd. d/b/a Nissan Motor Corporation in USA, subsequently filed a motion for rehearing, urging us to reconsider our opinion in light of recent cases from the Texas Supreme Court. We grant Nissan's motion for rehearing, withdraw our opinion of May 25, 2000, and substitute the following as the opinion of this Court.

This is an interlocutory appeal from an order granting class certification.[1] Nissan contends the trial court erred in certifying the class. We remand this case to the trial court for further proceedings consistent with this opinion.

1. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(3) (Vernon 1998).

2. The suit expressly excludes any claims for personal injury.

3. Section 17.50 provides, in relevant part, as follows:

## 1. Background

Appellees sued Nissan for economic damages[2] arising out of alleged defects in certain two-point motorized safety belt systems installed in Nissan vehicles, and requested class certification. Appellees allege the seat belt system is unfit for the ordinary purpose for which it is intended, is defective and inadequate, and violates the implied warranty of merchantability. Specifically, they allege the system is unreasonably dangerous and defective because it lacks adequate warnings that the separate manual lap belt must be used to avoid injury in an accident. Appellees claim that unless the lap belt is properly engaged, the system (1) will not perform its intended function of protecting passengers from injury in a collision and (2) can itself cause serious injury to the passenger it is supposed to protect. Appellees further claim that the snugness of the automatic shoulder portion of the seat belt system creates an express warranty that the user is safely restrained without manually engaging the lap belt portion, leading to a sense of false security, and that the accompanying warnings and instructions are inadequate to overcome this problem.

Appellees pleaded various causes of action against Nissan, including:

(1) breach of the implied warranty of merchantability; and

(2) violations of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"), and Tex. Bus. & Comm.Code Ann. §§ 17.01, 17.46, 17.50 (Vernon 1987):

 (a) breach of express warranties pursuant to section 17.50(a) of the DTPA;[3]

(a) A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:
(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:

(b) breach of implied warranties pursuant to section 17.50(a) of the DTPA;

(c) by using false, misleading and deceptive acts or practices as defined in Sections 17.50 and 17.46 of the DTPA in the following ways:

 (i) in causing confusion of or misunderstanding as to the source, sponsorship, approval or certification of goods or services in violation of section 17.46(b)(2) of the DTPA;

 (ii) in representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have, in violation of section 17.46(b)(5) of the DTPA;

 (iii) in representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another, in violation of section 17.46(b)(12) of the DTPA; and

 (iv) in representing that a guarantee or warranty can involve rights, or remedies, which it does not have or involve, in violation of section 17.46(b)(19) of the DTPA.

Appellees seek monetary compensation for all actual, special, and consequential damages and pecuniary losses including, but not limited to, the cost to repair each vehicle and/or replace the defective part, the cost of alternative transportation during the time necessary to repair each vehicle, and the value of the loss of use of each vehicle during the time necessary to repair each vehicle.

The trial court found that appellees' claims are based on an alleged common

(A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and
(B) relied on by a consumer to the consumer's detriment;

course of conduct of manufacturing and selling a defective product, which was allegedly marketed through a common course of similar misrepresentation, and ordered certification of a class consisting of "all residents in the State of Texas who own a Nissan vehicle equipped with a two-point passive restraint system equipped with a separate manual lap belt." The evidence showed this system was installed in various Nissan vehicles manufactured from 1987 through 1995, and that there are some 153,886 of these vehicles currently registered in Texas.

## 2. JURISDICTION

A party may complain of all matters pertaining to a class action certification by interlocutory appeal. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(3) (Vernon Supp.2000); *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 607 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.).

## 3. STANDARD OF REVIEW

■ It is well established that a trial court has broad discretion in determining whether to grant or deny class certification. *Entex v. City of Pearland*, 990 S.W.2d 904, 909 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *Union Pac. Resources Co. v. Chilek*, 966 S.W.2d 117, 120 (Tex.App.—Austin 1998, pet. dism'd w.o.j.). A class certification order will be reversed only if the record shows a clear abuse of discretion. *General Motors v. Bloyed*, 916 S.W.2d 949, 955 (Tex.1996); *FirstCollect, Inc. v. Armstrong*, 976 S.W.2d 294, 298 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.); *Chilek*, 966 S.W.2d at 120; *Central Power & Light*, 962 S.W.2d at 607. A trial court abuses its discretion if it acts arbitrarily, unreasonably or without reference to any guiding principles. *Downer v.*

(2) breach of an express or implied warranty;
TEX. BUS. & COMM.CODE ANN. § 17.50(a)(1) & (2) (Vernon Supp.2000).

*Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985); *Entex, 990 S.W.2d at* 909; *FirstCollect,* 976 S.W.2d at 298.

▓ A trial court also abuses its discretion when it fails to properly apply the law to undisputed facts, or when its ruling is based on factual assertions not supported by material in the record. *Texas Commerce Bank Nat'l Ass'n v. Wood,* 994 S.W.2d 796, 801 (Tex.App.—Corpus Christi 1999, pet. dism'd); *Hi–Lo Auto Supply, L.P. v. Beresky,* 986 S.W.2d 382, 386 (Tex.App.—Beaumont 1999, writ mand. denied). On appeal, the reviewing court must view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in favor of that ruling. *Wood,* 994 S.W.2d at 801; *Entex,* 990 S.W.2d at 908; *FirstCollect,* 976 S.W.2d at 299. In applying this standard, the reviewing court must defer to the trial court's factual determinations, so long as they are properly supported by the record, while reviewing its legal determinations *de novo. Entex,* 990 S.W.2d at 909; *Remington Arms Co., Inc. v. Luna,* 966 S.W.2d 641, 643 (Tex.App.—San Antonio 1998, pet. denied).

### 4. GENERAL REQUIREMENTS FOR CLASS CERTIFICATION

▓ Class action suits furnish an efficient means for numerous claimants with a common complaint to obtain a remedy where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages. *Bloyed,* 916 S.W.2d at 952–53 *(citing Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980)). Class actions also facilitate the spreading of litigation costs among numerous litigants with similar claims. *Bloyed,* 916 S.W.2d at 952–53 *(citing U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 403, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). However, even though it is an efficient device, there is no right to litigate a claim as a class action; rule 42 provides only that the court may certify a class

action if the plaintiff satisfies the requirements of the rule. *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 453, 2000 Tex. LEXIS 42, *20 (2000) (citing *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 647 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.), *mand. denied,* 951 S.W.2d 394 (Tex.1997)). The class action format must not unduly restrict a party from presenting viable claims or defenses without that party's consent. *Southwestern Refining Co. v. Bernal,* 22 S.W.3d 425, 436, 2000 Tex. LEXIS 50 at *26 (2000) (citing TEX.R. CIV. P. 815 and TEX. GOV'T CODE § 22.004(a)(Vernon Supp.2000) (state procedural rules may not abridge, enlarge, or modify the substantive rights of a litigant)). The class action device is not meant to alter the parties' burden of proof, right to a jury trial, or the substantive prerequisites to recovery. *Bernal,* at 437, 2000 Tex. LEXIS at *31.

A member of a class may sue or be sued as a representative party of the class only if all of the following requirements of rule 42(a) are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

TEX.R. CIV. P. 42(a). Additionally, at least one of the enumerated requirements set forth in rule 42(b) must be met. In this case, appellees pleaded rule 42(b)(4), which provides as follows:

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \*

(4) the court finds that questions of law or fact common to the members of the

class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Tex.R. Civ. P. 42(b)(4).

■■■■■ The trial court is charged with the initial task of identifying the substantive law issues and determining whether the character and nature of the class satisfies the requirements of class action. *FirstCollect,* 976 S.W.2d at 299; *Central Power & Light,* 962 S.W.2d at 607; *Rio Grande Valley Gas Co. v. City of Pharr,* 962 S.W.2d 631, 640 (Tex.App.—Corpus Christi 1997, pet. dism'd). The plaintiffs' right to proceed as a class may be established by materials which need not meet all the requirements of admissibility at trial. *Wood,* 994 S.W.2d at 801; *Health & Tennis Corp. of Am. v. Jackson,* 928 S.W.2d 583, 587 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.); *Vinson v. Texas Commerce Nat'l Bank,* 880 S.W.2d 820 (Tex.App.—Dallas 1994, no writ); *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 376 (Tex.App.—El Paso 1993, no writ).

### 5. TYPICALITY

The trial court found that:

the claims and defense of the representative parties are typical of the claims or defenses of the class. "Typicality" requires that a class representative possess the same interest and possess the same injury as the members of the class. While the named Plaintiffs need not suf-

fer precisely the same injury as the other class members, there must be a nexus between the injuries suffered by the class representative and those suffered by other class members. Here, Plaintiffs' claims share virtually identical factual and legal foundations with the claims of the class members. They have all purchased the same allegedly defective product and have alleged to have sustained damages therefrom. In addition, virtually each class member seeks virtually identical damages.

The court further found that the named plaintiffs would adequately protect the interests of the class, that the named plaintiffs' interests were not antagonistic to those of the other class members, and that counsel representing the named plaintiffs were adequate class counsel.

By its third issue, Nissan contends the trial court abused its discretion in finding that the claims of the purported class members were typical of the class claims because the representatives:

(a) were precluded by law from asserting breach of warranty claims;

(b) did not receive or rely upon any relevant representation;

(c) have factual situations that differ significantly from the class allegations; and

(d) did not receive the same warnings and instructions as the entire class.

■■■■■ Generally, the typicality requirement mandates that the class representatives possess the same interests and suffer the same injury as the class. *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Chilek,* 966 S.W.2d at 121; *Dresser Indus.,* 847 S.W.2d at 373. The class representative must not have interests antagonistic to those of the rest of the class. *Hi–Lo Auto Supply,* 986 S.W.2d at 388; *Central Power & Light,* 962 S.W.2d at 609.

■ In issue 3(a), Nissan contends the trial court abused its discretion in finding that the claims of the purported class members were typical of the class claims because two of the class representatives purchased used Nissan vehicles, and these class representatives cannot state a cause of action for breach of the implied warranty of merchantability because this warranty attaches only to the sale of new merchandise. Appellees admit that two class representatives did purchase used Nissan vehicles.

■ The class representative need not suffer precisely the same injury as the other class members, but there must be a nexus between the injury suffered by the representative and the injuries suffered by the other class members. *Rainbow Group,* 990 S.W.2d at 358; *Hi–Lo Auto Supply,* 986 S.W.2d at 387; *Chilek,* 966 S.W.2d at 121. To be typical, the representative's claims must arise from the same event or course of conduct giving rise to the claims of other class members and must also be based on the same legal theories. *Hi–Lo Auto Supply,* 986 S.W.2d at 387; *FirstCollect,* 976 S.W.2d at 301. Claims need not be identical or perfectly coextensive, just substantially similar. *Cedar Crest Funeral Home, Inc. v. Lashley,* 889 S.W.2d 325, 331 (Tex.App.—Dallas 1993, no writ). Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. *Dresser Indus.,* 847 S.W.2d at 373.

Here, the nexus required for typicality among the class representatives is the same alleged defect which was marketed in substantially the same way for all class members, including the class representatives. Even if two representatives are not entitled to recover damages under one theory, they have other theories under which they may recover damages. Furthermore, the class representatives' claims arise form the same event or course of conduct giving rise to the claims of the class, and are based on the same legal theories.

■ Nissan also contends in this sub-issue that appellees have failed to plead a proper defect upon which to base their breach of warranty claims and, therefore, there is no typicality. Nissan cites *General Motors Corp. v. Brewer,* 966 S.W.2d 56 (Tex.1998), in support of this contention. *Brewer* was also a class action suit arising out of an allegedly defective seat belt system. However, the *Brewer* plaintiffs did not allege that the seat belt failed to restrain, but that the poor design of the system, requiring disengagement of the seatbelt in order to enter or exit the vehicles, rendered the system non-passive.

The supreme court's decision in *Brewer* was a narrow one, holding that the plaintiffs had not raised a fact issue under section 2.314(b)(3) of the Texas Business & Commerce Code, which provides that a seller impliedly warrants goods to be fit for the ordinary purpose for which such goods are used. In *Brewer,* the supreme court stated:

> For goods to breach this warranty, they must be unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy.... Here, the product merely fails to fulfill the precise expectations of the consumer because the product is more cumbersome to use than anticipated. A product which performs its ordinary function adequately does not breach the implied warranty of merchantability merely because it does not function as well as the buyer would like.

*Id.* at 57. This is not dispositive of the issue of defectiveness in the instant case. Appellees allege more than mere cumbersomeness. They claim the seat belt system and its accompanying warnings are defective because they do not perform the ordinary function of a seat belt system—to provide adequate protection in a traffic accident—and they seek monetary damages to place adequate warnings in the vehicles and for incidental and consequential damages.

Here, the critical nexus among the class members is the alleged defectiveness of the seat belt system which was manufactured and marketed through a common course of conduct by Nissan. We overrule issue 3(a).

In issue 3(b), Nissan contends the trial court abused its discretion in finding that the DTPA breach of express warranty claims of the purported class members are typical of the class because the representatives did not rely on any express warranty given by Nissan. Again, the class claims the snugness of the passive seat-belt system created a representation that the wearer was safe without having to engage the manual lap belt. This claim is a critical nexus between the class representatives and the other class members. We overrule issue 3(b).

In issue 3(c) Nissan contends the trial court abused its discretion in finding that the claims of the purported class members were typical of the class claims because the "factual situation" of each class representative differs significantly from the class allegations.

### a. *Becky Fry Hernandez*

Class representative Becky Fry Hernandez purchased a used Nissan automobile. When she purchased the vehicle, Hernandez did not receive an owner's manual and the motor on the seat belt system did not work. She always manually engages the shoulder and lap belts in the vehicle and is concerned for the safety of her teenage daughter, who will soon be driving the car.

### b. *Albertano Aguilera*

Class representative Albertano Aguilera never received an owner's manual, and he is subject to the false security syndrome.

### c. *Lois Burke*

Class representative Lois Burke received an owner's manual, but she did not begin wearing the lap belt until a relative told her it was important to do so. She is concerned for the safety of passengers who ride with her.

We cannot say, as a matter of law, that the testimony of these three individuals precludes the typicality of the class representatives. There is no requirement that each class representative have exactly the same "factual situation" as the others, or of the class as a whole. As noted above, an analysis of typicality requires only that a nexus exists. Here, the nexus of the claim of the representatives and of the class is that the Nissan safety belt system at issue is defective and unreasonably dangerous, not only to the owners of the vehicles, but to their passengers as well. The evidence of differing "factual situations" may in fact bolster the class claims that the warnings given by Nissan concerning the seat belt system were inadequate to reach all users of Nissan vehicles. We overrule issue 3(c).

In issue 3(d), Nissan contends the trial court abused its discretion in finding that the claims of the purported class members were typical of class claims because the representatives did not receive the same warnings and instructions (in owner's manuals and on sun visors) as the entire class.

In the trial court, the plaintiff has the burden of establishing the right to proceed as a class, but is not required to make an extensive evidentiary showing in support of its motion for certification. *Wood*, 994 S.W.2d at 801; *Chilek*, 966 S.W.2d at 120; *Clements v. LULAC*, 800 S.W.2d 948, 952 (Tex.App.—Corpus Christi 1990, no writ). The trial court is not required to weigh the substantive merits of each class member's claim. *FirstCollect*, 976 S.W.2d at 299; *Central Power & Light*, 962 S.W.2d at 609; *Rio Grande Valley Gas*, 962 S.W.2d at 640. A class proponent does not have to prove a *prima facie* case of liability to be entitled to class certification. *Central Power & Light*, 962 S.W.2d at 608; *Microsoft*, 914 S.W.2d at 607; *Weatherly*, 905 S.W.2d at

647. Therefore, "no evidence" and "insufficient evidence" standards do not apply to the initial certification order. *Rio Grande Valley Gas*, 962 S.W.2d at 640. However, a class proponent must do more than merely allege that the requirements for certification have been met and must show "at least some facts" to support certification. *Weatherly*, 905 S.W.2d at 647; *Life Ins. Co. of the Southwest v. Brister*, 722 S.W.2d 764, 773 (Tex.App.—Fort Worth 1986, no writ).

At the certification hearing in this case, appellees produced an affidavit from an expert witness that all the passive restraint systems in question, as well as their accompanying warnings, were essentially identical. We find there are "at least some facts" in evidence that the seat belt systems and their accompanying warnings are similar. We overrule issue 3(d).

Because we conclude the trial court did not abuse its discretion in finding typicality, we overrule Nissan's third issue.

### 6. SUPERIORITY OF CLASS ACTION

The trial court found that

> a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

> Class treatment must also be a superior method of resolving the litigation in order for a class to be certified. The most obvious alternative to this class action is to remit the class members to individual actions. Here the class members are so numerous that their joinder or intervention would be unmanageable . . . Given the commonality of issues and the fact that this Court has already achieved a degree of familiarity with the relevant issues, having presided over multiple hearings and having reviewed the copious briefs of both parties, the potential filing of thousands, perhaps tens of thousands if individual lawsuits, would constitute an egregious waste of resources. Moreover, a class action is superior since it should be economically

unreasonable for class members to individually adjudicate separate claims particularly where the critical issues are factual, requiring substantial discovery, expert testimony and trial time. The prohibitive cost of individual litigation would not only be detrimental to the class member but also to the Defendants since they would be forced to litigate multiple proceedings. Accordingly, this Court finds that both efficiency and economy of litigation are served by the certification of this class. This class action is therefore superior to other methods of adjudication.

In its fourth issue, Nissan contends the trial court erred in finding that a class action suit is the superior form of adjudication for appellees' claims when:

(a) the court cannot require the warnings and instructions alleged to be necessary, and the class has not requested this relief;

(b) a federal agency is empowered to order a recall and cost-free remediation of the alleged problem on a nationwide basis;

(c) the federal agency remedy would eliminate any economic damages; and

(d) class representatives testified that an affirmative remedy approach would be superior to the class action approach.

Rule 42(b)(4) requires class treatment to be superior for the fair and efficient adjudication of the controversy. TEX.R. CIV. P. 42(b)(4); *Bernal*, at 433, 2000 Tex. LEXIS 50 at *29. Class certification is appropriate where repeated litigation of the common issues in individual actions is grossly inefficient, exorbitantly costly, and a waste of judicial resources. *Rainbow Group*, 990 S.W.2d at 360; *FirstCollect*, 976 S.W.2d at 303. Class action is superior to other methods of adjudication where any difficulties which might arise in the management of the class are outweighed by benefits of classwide resolu-

tion of common issues. *Central Power & Light,* 962 S.W.2d at 611; *Weatherly,* 905 S.W.2d at 655; *National Gypsum Co. v. Kirbyville Indep. Sch. Dist.,* 770 S.W.2d 621, 626 (Tex.App.—Beaumont 1989, writ dism'd. w.o.j.). However, although a goal of our system is to resolve lawsuits with great expedition and dispatch and at the least expense, the supreme objective of the courts is to obtain a just, fair, equitable and impartial adjudication of the rights of the litigants under established principles of substantive law; this means that convenience and economy must yield to a paramount concern for a fair and impartial trial. *Bernal,* at 437, 2000 Tex. LEXIS at *32.

In issue 4(a), Nissan contends the trial court erred in finding that a class action suit is the superior form of adjudication for appellees' claims because "the court cannot require the warnings and instructions allegedly necessary and class counsel has not requested such relief."

In this case, appellees are not asking the court for any injunctive relief. They are seeking monetary damages to remedy the alleged defect, and incidental and consequential damages to pay for alternate transportation while the alleged defect is being remedied. Nissan argues that the National Highway Traffic Safety Administration ("NHTSA") is a superior forum for appellees' claims. NHTSA, however, may only order a safety recall of motor vehicles; it is not empowered to order monetary damages. We overrule issue 4(a).

In issues 4(b) and 4(c), Nissan contends the trial court erred in finding that a class action suit is the superior form of adjudication for appellees' claims because (1) NHTSA is empowered to order a recall and cost-free remediation of the alleged problem on a nationwide basis, and (2) the NHTSA remedy would eliminate any economic damages.

Nissan argues that a better resolution would be a cost-free safety recall of the vehicles by NHTSA. However, this mat-

ter has already been rejected by that agency. On September 17, 1997, the trial court ordered appellees to file a petition with the administrator of NHTSA, and they did so. By letter dated December 11, 1997, NHTSA informed the parties that it could not provide the relief (monetary damages) sought by the appellees.

As we have previously noted, appellees are not seeking injunctive relief. They are seeking monetary damages to remedy the alleged defect, and incidental and consequential damages to pay for alternate transportation while the alleged defect is being remedied. All monetary damages would not necessarily be eliminated by a NHTSA-ordered recall, and NHTSA is not empowered to grant monetary damages. Accordingly, we conclude the trial court did not err in finding that a class action suit is the superior form of adjudication for appellees' claims. We overrule issues 4(b) and 4(c).

In issue 4(d), Nissan contends the trial court erred in finding that a class action suit is the superior form of adjudication for appellees' claims because class representatives testified that an administrative remedy approach would be superior to the class action approach.

That the class representatives may have thought a nationwide solution would be better is not dispositive of the issue of superiority of the class action method. Evidence presented at the certification hearing indicated that denying class certification would leave many class members without any meaningful remedy, given the impracticability of each member suing for his individual small monetary claim against Nissan. *See Bloyed,* 916 S.W.2d at 952 (Class actions are efficient means for numerous claimants with common complaint to obtain remedy where it is not economically feasible to obtain relief by traditional method of multiplicity of small individual suits). Also, if a substantial number of Nissan owners decided to file suit, the cases would use up many judicial re-

sources. *See Rainbow Group,* 990 S.W.2d at 360; *FirstCollect,* 976 S.W.2d at 303 (class certification is appropriate where repeated litigation of the common issues in individual actions is grossly inefficient, exorbitantly costly, and a waste of judicial resources). The class action conserves these resources and, as the trial court noted, it has already become familiar with the issues in this case. *See* TEX.R. CIV. P. 42; *Central Power & Light,* 962 S.W.2d at 612 (One factor in determining the superiority of the class action method is that the trial court has invested time and effort in familiarizing itself with the issues in dispute during several hearings). Appellants' issue 4(d) is overruled.

Because we conclude the trial court did not abuse its discretion in finding that the class certification method is superior to the administrative approach, we overrule Nissan's fourth issue.

### 7. COMMONALITY

The trial court found that questions of law and fact common to all class members include at least the following:

(1) whether Nissan breached express and implied warranties pursuant to Section 17.50(a)(2) of the DTPA;

(2) whether Nissan used of employed false, misleading and deceptive acts or practices as defined in Sections 17.50 and 17.46 of the DTPA in each or, or through a combination of the following:

 (a) in causing confusion of or misunderstanding as to the source, sponsorship, approval or certification of goods or services in violation of section 17.46(b)(2) of the DTPA;

 (b) in representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have, in violation of section 17.46(b)(5) of the DTPA;

 (c) in representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another, in violation of section 17.46(b)(12) of the DTPA; and

 (d) in representing that a guarantee or warranty can involve rights, or remedies, which it does not have or involve, in violation of section 17.46(b)(19) of the DTPA.

(3) whether Nissan breached the implied warranty of merchantability under Section 2.314(b)(3) of the Texas Business and Commerce Code because the subject seat belt systems were not reasonably fit for their intended purposes or fir for the ordinary purposes for which such goods were used (i.e. providing safe transportation and protecting occupants from injury in collisions); and

(4) whether Nissan sold vehicles equipped with inadequate warnings and instructions for the use of the two point passive restraint system equipped with a separate manual lap belt.

Plaintiffs' allegations are based on a common course of conduct of manufacturing and selling a defective product, and additionally that such product was allegedly marketed through a common course of similar misrepresentation. Accordingly, the commonality requirement of Rule 42(a)(2) is satisfied.

By its first issue, Nissan contends the trial court abused its discretion by identifying breach of warranty, defectiveness, and DTPA representations as common questions when:

 (a) appellees have failed to plead a viable breach of warranty claim;

 (b) the class includes used vehicle purchasers who cannot assert implied warranty claims;

 (c) class members received varying warnings and instructions regarding

seat belt usage, and these varying warnings and instructions are the basis of the class claims;

(d) the record contains no evidence that any class member received any relevant express warranty; and

(e) the record contains no evidence that any class member received any relevant untrue representation.

Rule 42(a)(2) does not require that all or even a substantial portion of the legal and factual questions be common to the class. *Rainbow Group, Ltd. v. Johnson*, 990 S.W.2d 351, 358 (Tex.App.—Austin 1999, pet. dism'd. w.o.j.); *FirstCollect*, 976 S.W.2d at 300. It requires only that some legal or factual questions be common to the class. *Rainbow Group*, 990 S.W.2d at 358; *Reserve Life Ins. Co. v. Kirkland*, 917 S.W.2d 836, 842 (Tex.App.—Houston [14th Dist.] 1996, no writ). The commonality requirement means that an issue of law or fact exists that inheres in the complaints of all the class members. *Entex*, 990 S.W.2d at 919; *Microsoft Corp. v. Manning*, 914 S.W.2d 602 611 (Tex.App.—Texarkana 1995, writ dism'd w.o.j.). Questions common to the class are those which, when answered as to one class member, are answered as to all class members. *Entex*, 990 S.W.2d at 919; *Chilek*, 966 S.W.2d at 122; *Weatherly*, 905 S.W.2d at 648. The common issue may be one of law or fact; there need not be common issues of law and fact. *FirstCollect*, 976 S.W.2d at 300; *Wente v. Georgia–Pac. Co.*, 712 S.W.2d 253, 255 (Tex.App.—Austin 1986, no writ). A single common question could provide grounds for class action. *FirstCollect*, 976 S.W.2d at 300; *Rio Grande Valley Gas*, 962 S.W.2d at 641; *Microsoft*, 914 S.W.2d at 611. The commonality requirement is generally considered satisfied where (1) many members of the class are subject to the same misrepresentation or omissions by reason of common documents, or (2) the defendant is alleged to have engaged in a common course of conduct. *Rio Grande Valley Gas*, 962 S.W.2d at 643; *Weatherly*, 905 S.W.2d at 651 (*cit-*

*ing Adams v. Reagan*, 791 S.W.2d 284, 289 (Tex.App.—Fort Worth 1990, no writ)).

In issue 1(a), Nissan contends the trial court erred in finding commonality because appellees failed to plead a viable breach of warranty claim.

Nissan again cites *Brewer*, 966 S.W.2d 56, in support of its contention. However, we have already held in issue 3(a) that *Brewer* is not dispositive of the issue of defectiveness in this case. Furthermore, a common question is defined as one which when answered as to one class member is answered as to all class members. *See Reserve Life*, 917 S.W.2d at 842. Here, a jury finding of "defect" or "no defect" will affect the claim of each and every class member. We overrule Nissan's issue 1(a).

In issue 1(c), Nissan contends the trial court erred in finding commonality because class members were given different warnings (in owner's manuals and on sun visors) depending on the model purchased.

We have already held in issue 3(d) that there are "at least some facts" in evidence regarding the similarity of the warnings and instructions accompanying the seat belt system. *See Weatherly*, 905 S.W.2d at 647; *Brister*, 722 S.W.2d at 773. We overrule issue 1(c).

In issue 1(d), Nissan contends the trial court erred in finding commonality because there is no evidence that class members received any relevant express warranty upon which they relied. Appellees assert the snugness of the shoulder portion of the passive restraint system against the chest of the driver and front seat passenger creates an express warranty that the user is safely restrained without using the manual lap belt.

While this may be a novel application of express warranty law, the issue now before us is the commonality of this cause of action. Again, a common question is defined as one which when answered as to one class member is answered as to all class members. *See Reserve Life*, 917

S.W.2d at 842. A jury finding that Nissan "gave an express warranty" or "did not give an express warranty" will affect the claim of each and every class member. We overrule issue 1(d).

■ In issue 1(e), Nissan contends the trial court erred in finding commonality because there is no evidence that any class members received any relevant untrue representations.

As with the issues of defectiveness and breach of express warranty, the class will have to prove it received untrue representations about the seat belt system. This, too, is a common question. If the class fails to convince a jury, this issue will affect the claims of each and every class member. *See Reserve Life*, 917 S.W.2d at 842 (a common question is defined as one which when answered as to one class member is answered as to all class members). We overrule issue 1(e).

■ In issue 1(b), Nissan contends the trial court erred in finding commonality because the implied warranty of merchantability attaches only to the sale of new merchandise, and some members of the class purchased used Nissan vehicles. Nissan does not complain about the class members that purchased new Nissan vehicles.

Appellees concede that some members of the class purchased used vehicles, and these class members may have no claim for breach of the implied warranty of merchantability. However, it is uncontested that these class members have other causes of action against appellant.

Under prior Texas law, as long as class certification was sought and decided at an early phase of the litigation, before supporting facts have been fully developed, trial courts were mandated to favor certifying a class action. *FirstCollect*, 976 S.W.2d at 299; *Chilek*, 966 S.W.2d at 123; *Dresser Indus.*, 847 S.W.2d at 376. This was due in part to the fact that a certification order was always subject to later modification if circumstances required it.

*FirstCollect*, 976 S.W.2d at 299; *Rio Grande Valley Gas*, 962 S.W.2d at 640; *Weatherly*, 905 S.W.2d at 647 (citing Rule 42, which allows the trial court to alter, amend or withdraw class certification at any time before final judgment, or order the naming of additional parties or the division of the class into subclasses to insure adequate representation).

■ However, recent Texas Supreme Court authority overturns this case law. The *Bernal* opinion "reject[s] this approach of certify now and worry later," *Bernal*, at 435, 2000 Tex. LEXIS 50 at *23, and requires a rigorous analysis now be made at the initial certification hearing to determine whether all the prerequisites to certification have been met. *Id.* at 435, at *24. While this pronouncement was made in the context of the question of whether common issues will predominate over individual issues at trial, it is clear the law now requires the class certification order to be as specific as possible as to the mechanics of the litigation. *See id.* at 435, at *24 ("Although it may not be an abuse of discretion to certify a class that could later fall, we conclude that a cautious approach to class certification is essential."). Furthermore, "the trial court's discretion to define, modify, subclassify, or decertify in response to the case's development counsels in favor of remanding to the trial court when an appellate court identifies definitional problems." *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 407, 2000 Tex. LEXIS 23, *24 (2000).

We conclude the trial court abused its discretion in finding commonality because the class members who purchased used vehicles may have no claim for breach of the implied warranty of merchantability. We sustain issue 1(b).

## 8. PREDOMINANCE OF COMMON ISSUES OVER INDIVIDUAL ISSUE

In its class certification order, the trial court found that

The questions of law or fact common to the members of the class predominate over any questions affecting only individual members. . . . The test for establishing predominance of common issues is whether they will be the object of most of the efforts of the parties and the court, not whether common issues outnumber individual issues. In deciding whether common issues predominate, this Court need only identify substantive law issues that would control the litigation. This Court need not weigh the substantive merits of each class member's claim, nor need the class representative make any extensive evidentiary showing of this or her right to prevail. Having identified the substantive law issues that will control this litigation, including those set forth above, this Court concludes that common issues will be the object of most of the efforts of the litigants and the Court.

By its second issue, Nissan contends the trial court erred in finding that common issues will predominate over individual issues at trial when:

(a) reliance, causation, damages and other issues must be litigated for each class member;

(b) class counsel submitted no trial plan and did not otherwise indicate a method for resolving the individual issues; and

(c) the record contained no information from which the court could conclude the individual issues would not be the focus of litigation.

 The commonality requirement is subsumed under the more stringent rule 42(b)(4) requirement that common questions of law or fact predominate over questions involving individuals. Tex.R. Civ. P. 42(b)(4); *Bernal,* at 434, 2000 Tex. LEXIS 50 at *19; *Rio Grande Valley Gas,* 962 S.W.2d at 642 (*citing Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2243, 138 L.Ed.2d 689 (1997) (construing analogous requirement under Federal Rule of Civil Procedure 23)). The exis-

tence of a common question is not enough to suffice for class certification; the court has the duty to evaluate the relationship between common and individual issues. Tex.R. Civ. P. 42(b)(4); *Rainbow Group,* 990 S.W.2d at 360; *E. & V. Slack v. Shell Oil Co.,* 969 S.W.2d 565, 569 (Tex.App.— Austin 1998, no pet.). The test for predominance is not whether common issues outnumber the individual issues, but instead whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Bernal,* at 434, 2000 Tex. LEXIS 50 at *19; *Rainbow Group,* 990 S.W.2d at 360; *Hi–Lo Auto Supply,* 986 S.W.2d at 387; *Entex,* 990 S.W.2d at 919; *Central Power & Light,* 962 S.W.2d at 610.

 In the past, there was a presumption that, in cases where it appeared common issues might predominate over individual issues, the most efficient approach for the trial court was to certify the class and, if necessary after the case had developed, to dissolve or modify the class if common questions did not predominate at trial. *Rainbow Group,* 990 S.W.2d at 360; *Sheldon,* 965 S.W.2d at 72; *Brister,* 722 S.W.2d at 775; *Health & Tennis Corp.,* 928 S.W.2d at 590. However, the Texas Supreme Court has recently redefined the standards by which the predominance of common issues over individual ones is analyzed. As noted above, in *Bernal,* the supreme court rejected the approach to class certification of "certify now and worry later" and emphasized the importance of vigorously applying the predominance requirement at the time initial class certification is sought. *Bernal,* at 435, 2000 Tex. LEXIS 50 at *23 (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). The predominance requirement is intended to prevent class action litigation when the sheer complexity and diversity of the individual issues would overwhelm or confuse a jury or severely compromise a party's ability to present viable claims or defenses. *Bernal,* at 434, 2000 Tex. LEXIS 50 at

*20–21. The *Bernal* opinion reiterated that the more exacting standards of the predominance inquiry act as a check on the flexible commonality test under rule 42(a)(2):

> Courts must perform a rigorous analysis before ruling on class certification to determine whether all prerequisites to certification have been met. Although it may not be an abuse of discretion to certify a class that could later fail, we conclude that a cautious approach to class certification is essential. The flexibility of Rule 42 enhances the usefulness of the class-action device, [but] actual, not presumed, conformance with [the Rule] remains indispensable. As the Supreme Court stressed in *Amchem:* "Courts must be mindful that the rule as now composed .... limits judicial inventiveness." Thus it is improper to certify a class without knowing how the claims can and will likely be tried.

*Id.* at 435, at *24–25 (citations omitted).

 In issue 2(a), Nissan contends the trial court erred in finding that common issues will predominate because reliance, causation, damages and other issues must be litigated for each class member.

 In determining whether common issues predominate, the trial court need only identify substantive law issues that will control the litigation. *Id.* at 434, at *19; *Central Power & Light,* 962 S.W.2d at 610. Class certification will not be prevented merely because damages must be determined separately for each member of the class, nor because of the presence of an arguable defense peculiar to certain members. *Central Power & Light,* 962 S.W.2d at 610; *Angeles/Quinoco Sec. Corp. v. Collison,* 841 S.W.2d 511, 516 (Tex.App.—Houston [14th Dist.] 1992, no writ). The trial court found that the following common substantive law issues will control the case: (1) an alleged common course of manufacturing a defective product; (2) an alleged common course of selling a defective product; and (3) an alleged marketing scheme based on a course of similar misrepresentation. We overrule issue 2(a).

 In issue 2(c), Nissan contends the trial court erred in finding that common issues will predominate because the record contained no information from which the court could conclude that individual issues would not be the focus of litigation.

At the certification hearing, class counsel argued that common issues would predominate over individual ones because: (1) the seat belt systems in question operate in an essentially identical manner, giving rise to the same express warranty for each class member; (2) the warnings given in the vehicles were essentially identical, according to the plaintiffs' expert, giving rise to the same defect for each class member; and (3) the cost-of-repair damages would be virtually identical for each class member. He also cited several cases, involving similar circumstances, in which a class had been certified. Nissan's counsel disputed each of these claims, and provided examples of several cases in which a class had not been certified.

 The record reflects the facts on this issue were vigorously disputed. A trial court does not abuse its discretion when it bases its decision on conflicting evidence. *Weatherly,* 905 S.W.2d at 648; *Vinson v. Texas Commerce Bank—Houston,* 880 S.W.2d 820, 823 (Tex.App.—Dallas 1994, no writ). We overrule issue 2(c).

 In issue 2(b), Nissan contends the trial court erred in finding that common issues predominate because class counsel submitted no trial plan and did not otherwise indicate a method for resolving individual issues.

In *Bernal,* the supreme court stated:

> it is improper to certify a class without knowing how the claims can and will likely be tried. A trial court's certification order must indicate how the claims will likely be tried so that conformance with Rule 42 may be meaningfully evaluated. "Given the plaintiffs' burden, a

court cannot rely on [mere] assurances of counsel that any problems with predominance or superiority can be overcome." To make a proper analysis, "going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." Any proposal to expedite resolving individual issues must not unduly restrict a party from presenting viable claims or defenses without that party's consent. If it is not determinable from the outset that the individual issues can be considered in a manageable, time-efficient, yet fair manner, then certification is not appropriate.

*Bernal*, at 435–436, 2000 Tex. LEXIS 50 at *25–26.

■ *Bernal* clearly requires that the certification order contain a plan for dealing with individual issues, and for the specifics of the plan to be considered by the trial court in determining whether common issues will predominate over individual issues. In light of *Bernal*, we conclude the trial court erred in finding that common issues predominate because class counsel (1) did not submit a trial plan and (2) did not otherwise indicate a method for resolving individual issues. We sustain issue 2(b).

### 9. Conclusion

We have concluded the trial court abused its discretion in finding commonality because the class members who purchased used vehicles may have no claim for breach of the implied warranty of merchantability, although they have other causes of action against appellant. We remand to the trial court to determine if the establishment of sub-classes can cure this problem.

We have also concluded the trial court erred in finding that common issues predominate because class counsel (1) did not submit a trial plan and (2) did not otherwise indicate a method for resolving individual issues. We remand to the trial court for a new determination of whether, under the *Bernal* standards, common issues will predominate over individual issues.

This case is remanded to the trial court for further proceedings consistent with this opinion.