**J.C. PENNEY COMPANY, INC., et al., Appellants,**

v.

**Gayle G. PITTS, et al., Appellees.**

**No. 13–02–540–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

July 15, 2004.

As corrected on Overruling of Rehearing Aug. 12, 2004.

456

Frank E. Weathered, Dunn & Weath-
ered, Corpus Christi, James David Brown,

Joel W. Reese, Winstead, Sechrest & Minick, P.C., Dallas, for Appellants.

David H. Berg, Berg & Androphy, Houston, Stephen Gardner, Dallas, J.A. 'Tony' Canales, Canales & Simonson, P.C., Corpus Christi, Tamera L. Venzke, John P. Venzke, Venzke Law Firm, LLP, Houston, for Appellees.

Before Chief Justice VALDEZ and Justices HINOJOSA and RODRIGUEZ.

## OPINION

Opinion by Chief Justice VALDEZ.

Appellants, Stonebridge Life Insurance Company, et al.,[1] appeal the certification of a nationwide class of consumers who purchased Accidental Death and Dismemberment (ADD) insurance from appellants. By four issues, appellants contend: (1 & 3) rule 42(b)(4)'s [2] predominance and superiority requirements are not met; (2) the trial plan infringes on appellants' legal rights; and (4) rule 42(a)(3)'s typicality requirement is not met. We reverse and remand.

## I. Facts and Procedural History

■ On August 8, 2002, appellees, Gayle G. Pitts, et al.,[3] filed their sixth amended class-action petition against appellants alleging they improperly charged appellees' credit card accounts for premiums on ADD insurance without obtaining appellees' consent for the charges. Appellees' causes of action include: (1) money had and received; [4] (2) conspiracy; and (3) violations of the Texas Theft Liability Act (TTLA).[5] Further, appellees sought the following damages: (1) actual damages; (2) additional damages under the TTLA; and (3) statutory, unlimited exemplary damages for TTLA violations. The trial court held a two-day hearing and certified the class under rule 42(b)(4).[6] Below is a summary

---

1. The appellants are Stonebridge Life Insurance Company (formerly known as J.C. Penney Life Insurance Company); J.C. Penney Company, Inc.; J.C. Penney Direct Marketing Services, Inc.; J.C. Penney International Insurance Group, Inc.; AEGON Special Markets Group, Inc.; and AEGON USA, Inc.

2. Subparagraph (b)(3) of rule 42 was omitted as unnecessary, effective January 1, 2004. *See Compaq Computer Corp. v. Lapray,* 135 S.W.3d 657, 661, 47 Tex. Sup.Ct. J. 522, No. 02–0705, 2004 Tex. LEXIS 435, at *1 (May 7, 2004). Former subparagraph (b)(4) is now (b)(3). *See id.* This opinion will refer to subparagraph (b)(4) for ease of reference. However, on remand, the trial court proceedings will be governed by the amended rule. *See id.* (citing *Ex parte Abell,* 613 S.W.2d 255, 260–61 (Tex.1981)).

3. The named representatives are Gayle G. Pitts, Louis and Roberta Felds, and Mary Vanderford.

4. Money had and received is an equitable action that may be maintained to prevent unjust enrichment when one person obtains money, which in equity and good conscience belongs to another. *Staats v. Miller,* 150 Tex. 581, 584, 243 S.W.2d 686, 687 (1951); *Phippen v. Deere,* 965 S.W.2d 713, 725 n. 1 (Tex. App.-Texarkana 1998, no pet.); *see* 64 Tex. Jur.3d *Money had and received* § 6 (2003) (describing equitable nature of money had and received).

5. Tex. Civ. Prac. & Rem.Code Ann. § 134.001 (Vernon Supp.2004).

6. The class included the following members:

All individuals in the United States (1) from whom Defendants received premium payments for accidental death and dismemberment (ADD) insurance from November 28, 1996, until the date of certification, (2) by means of either a credit card charge or bank account debit initiated by any Defendant, (3) after a telemarketing contact initiated by any Defendant, and (4) who have not made a claim or received benefits from any Defendant under any (ADD) insurance policy, and (5) who have not received a full refund of 15 years worth of premiums paid under an ADD policy containing the 15–year money back provision.

of the trial court's findings of fact and conclusions of law.

Appellants purchased customer lists from approximately forty-five different credit card issuers that contained confidential information including credit card and bank account numbers. This information was used in a two-step process to market[7] the ADD insurance to specific market segments. First, telemarketers offer consumers a free trial membership of either sixty or ninety days for ADD insurance coverage. Following a written-uniform sales pitch, telemarketers describe the program, answer questions, and tell the consumers that they must call within sixty or ninety days to cancel the policy or their credit or bank cards will be automatically billed. However, customers are neither asked for their credit card information nor informed that appellants have preacquired this information. Once the customers are setup for enrollment under step one, a licensed-insurance agent finalizes the deal and informs them that they must cancel the policy within sixty or ninety days to avoid having their accounts debited. Only the second part of the marketing process is recorded.[8]

The trial court determined this case would almost exclusively be decided by the answer to a single question: "[w]hether a customer's 'yes' answer to the scripted question of whether the customer would like to enroll in the insurance program did or did not constitute permission to charge his credit card or debit his bank account." The trial court then discussed its decision on choice of law.

The trial court applied Texas law to the nationwide class after considering that appellants' activities and actions originated in Texas.[9] It determined appellants failed to offer proof, under Texas Rule of Evidence 202, that Texas law is different from other jurisdictions on issues of agency, ratification, joint enterprise, damages, penal code violations (under the TTLA), and attorney's fees. It then presumed the law was the same as that of other states and the District of Columbia on these subjects. The trial court also found that appellants failed to show a true conflict between the law of Texas and other jurisdictions regarding claims for money had and received and conspiracy. It then certified the nationwide class, which is estimated to have between six and fourteen million class members.[10]

## II. Discussion

### A. Standard of Review

We review a trial court's ruling on a class certification for abuse of discretion. *Southwestern Ref. Co. v. Bernal*, 22

7. The trial court determined that the ADD insurance was marketed in at least forty-three states and the District of Columbia.

8. The tape recordings are kept for one year.

9. The trial court considered the following factors when it decided to apply Texas law: (1) telemarketing scripts were developed in Texas; (2) no choice-of-law provisions governed the insurance certificate; (3) physical certificates originated from Plano, Texas; (4) customer-service calls are answered in Texas; (5) changes to beneficiaries are done in Texas; (6) claims are submitted in Texas; (7) insurance certificates include phone numbers to Texas Department of Insurance and the Texas Life, Accident Health and Hospital Service Insurance Guaranty Association; (8) appellants' claims department is located in Texas; (9) appellants' headquarters are in Plano, Texas; (10) J.C. Penny Life Insurance Company filed advertising registration in Texas; (11) over 1.4 million class members live in Texas; and (12) AEGON, J.C. Penney's parent company, is located in Texas.

10. We note the trial court did not have the benefit of *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 678 (Tex.2002) when it certified this class action.

S.W.3d 425, 439 (Tex.2000). However, we do not indulge every presumption in favor of the trial court's ruling because actual "compliance with [Texas Rule of Civil Procedure] 42 must be demonstrated rather than presumed." *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex.2002). Because rule 42 was patterned after the federal rule, "federal decisions and authorities interpreting federal class action requirements are persuasive in Texas actions." *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452 (Tex.2000). Further, the trial court "must perform a 'rigorous analysis' before ruling on a class certification to determine whether all prerequisites to certification have been met." *Bernal*, 22 S.W.3d at 435. A court makes a proper analysis by going beyond the pleadings because it " 'must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issue.' " *Id.* (quoting *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)).

## B. Rule 42(b)(4)

Rule 42 provides a two-step process for class certification. First, all class actions must meet rule 42(a)'s four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Tex.R. Civ. P. 42(a). Second, the class must meet the requirements of one of three subdivisions under rule 42(b). Rule 42(b)(4) requires the trial court to make two additional findings: predominance and superiority.[11] Tex.R. Civ. P. 42(b)(4). As an initial matter, we address appellees' attempts to abandon certain claims on appeal.

## 1. Abandonment

■ On appeal, in light of *Henry Schein, Inc.*, appellees attempt to abandon their claims for violations of the TTLA, civil conspiracy, and exemplary damages in an attempt to salvage the certification. *Henry Schein, Inc.*, 102 S.W.3d at 692–95. Appellees wish to proceed only on the theory of money had and received. In support of their position, appellees direct our attention to *Henry Schein, Inc.*

In *Henry Schein, Inc.*, the trial court certified the class under both 42(b)(1)[12] and 42(b)(4). *Id.* at 691. The parties

---

**11.** Rule 42(b)(4) allows a class action to proceed if:

> the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Tex.R. Civ. P. 42(b)(4) (emphasis added).

**12.** Rule 42(b)(1) allows for an action to be maintained as a class action if 42(a) is satisfied and:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Tex.R. Civ. P. 42(b)(1).

agreed that the underlying plaintiffs did not meet the requirements of 42(b)(1) and that the trial court erred in certifying the class under that section. *Id.* The court of appeals held that the trial court's error did not require reversal because the plaintiffs were free to abandon that part of the certification order in the course of the appeal. *Id.* The court of appeals affirmed the certification order in its entirety. *Id.* The supreme court concluded the court of appeals should have reversed the erroneous portion of the order because the "plaintiffs cannot by their concession amend the trial court's order so that it may be affirmed." *Id.* at 692.

Also, pertinent to the issue of abandonment presented in this case is the supreme court's treatment of the plaintiff's desire to forego consequential damages at the appellate level. The supreme court concluded that consequential damages would have to be calculated on a class member by class member basis. *Id.* at 694. In reaching that conclusion, the court noted the plaintiffs' willingness to forego their claims for consequential damages on appeal and stated:

> They have not, however, amended their pleadings to strike that claim, and it is not clear that they could readily do so. Such an amendment would be a dismissal of significant, viable claims of which potential class members may be entitled to notice under Rule 42(e).[13]

*Id.* at 694–95. The court determined that, considering the attempt to forego consequential damages, it was not clear whether

a class action was superior if it required plaintiffs to give up substantial rights, nor was it clear whether the willingness of the five named plaintiffs to forego those claims was typical of the other class members. *Id.* at 695. Lastly, the court noted that whether a class excluding consequential damages could or should be certified was not explored by the trial court. *Id.*

Here, appellees have not amended their pleadings to strike claims for violations of the TTLA, civil conspiracy, or exemplary damages. Appellees do not contend these claims are not viable, but merely attempt to abandon these claims to save the certification from reversal. Thus, any attempt to abandon these claims on appeal of a certified class could trigger the notice requirements of rule 42(e)(1)(B). *See id.* at 695. In any case, appellees' attempt to abandon these claims at the appellate level does not serve to amend the trial court's order so that it may be affirmed. *See id.* at 692. Accordingly, we consider all of appellees claims in determining if it satisfied rule 42. We now turn to the merits of appellees' first and third issues challenging the certification under rule 42(b)(4).

### 2. Predominance

 The predominance requirement "prevent[s] class action litigation when the sheer complexity and diversity of individual issues would overwhelm or confuse a jury or severely compromise a party's ability to present viable claims or defenses." *Bernal,* 22 S.W.3d at 434. "The test for predominance is not whether common is-

---

13. At the time *Henry Schein, Inc.* was handed down, rule 42(e) read: "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." The rule was amended effective January 1, 2004 and now provides in pertinent part:

(1)(A) The court must approve...dismissal... of the claims, issues, or defenses of a certified class.
(B) Notice of the material terms of the proposed...dismissal...shall be given to all members in such manner as the trial court directs.
Tex.R. Civ. P. 42(e).

sues outnumber uncommon issues but ... 'whether common or individual issues will be the object of most of the efforts of the litigants.'" *Id.* (quoting *Cent. Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 610 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.)). Further, "[c]ourts determine if common issues predominate by identifying the substantive issues of the case that will control the outcome of the litigation, assessing which issues will predominate, and determining if the predominating issues are, in fact, those common to the class." *Id.*

■ Appellants argue the trial court erred in applying Texas law to the entire class because appellees failed to show any differences between the laws of Texas and other jurisdictions. They also contend the trial court erred in finding Texas has the most significant interest in applying its law to the class action.

■ Under rule 42(b)(4), the class members, not the appellants, bear the burden to show common questions of law or fact predominate, which includes demonstrating an absence of conflicting state laws. *DaimlerChrysler Corp. v. Inman,* 121 S.W.3d 862, 886 (Tex.App.-Corpus Christi 2003, pet. filed); *Tracker Marine, L.P. v. Ogle,* 108 S.W.3d 349, 352 (Tex. App.-Houston [14th Dist.] 2003, no pet.); *see, e.g., Spence v. Glock,* 227 F.3d 308, 313 (5th Cir.2000) ("The burden of proof lies with the plaintiffs; in not presenting a sufficient choice of law analysis they have failed to meet their burden of showing that common questions of law or fact predominate."). Also, Texas adopted the Restatement's "substantial relationship" test for deciding which law to apply. *Hughes Wood Prods., Inc. v. Wagner,* 18 S.W.3d 202, 205 (Tex.2000). Under this test, courts consider the "qualitative nature of the particular contacts" with a state, and the "state policies underlying the particu-

lar substantive issue[s]" before deciding which state's law to apply. *Hughes Wood Prods., Inc.,* 18 S.W.3d at 205; *Duncan v. Cessna Aircraft, Co.,* 665 S.W.2d 414, 421 (Tex.1984); RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 6 (1971).

■ Here, the trial court improperly presumed there were no conflicts of law for appellees' claims of agency, ratification, joint enterprise, damages, penal code violations, and attorney's fees because appellants failed to provide a sufficient choice-of-law analysis. The burden was on appellees, not appellants, to establish an absence of conflicts of law in order to show common issues of law or fact predominated. *See DaimlerChrysler Corp.,* 121 S.W.3d at 886. Further, the trial court's choice of law analysis is incomplete because it only considered that appellants are headquartered in Texas and that their acts originated in Texas. The defendant's residence in Texas alone does not dictate that Texas law will govern all class members' claims. *Henry Schein, Inc.,* 102 S.W.3d at 697. The substantial relationship test requires courts to consider not only the defendants' contacts with other states, but also the interests of other states in having their laws apply. *See id.* Appellees failed "to demonstrate that Texas law should apply to so many of those claims that common legal issues predominate." *Id.*

Under these facts we find appellees failed to show the predominance requirement was satisfied. Appellants first issue is sustained. Because appellees indicate they intend to abandon certain causes of action and because the trial court still has significant pre-certification work to do on choice-of-law issues, we will not prospectively evaluate its compliance with rule 42 outside this context. *See DaimlerChrysler Corp.,* 121 S.W.3d at 886.

## III. Conclusion

We do not say "that no class action can be certified in this case; that matter must be decided by the trial court in the first instance." *Henry Schein, Inc.*, 102 S.W.3d at 701. We find only that appellees failed to show that common issues of law or fact predominate. Because we hold the trial court abused its discretion in certifying the class under rule 42(b)(4), we do not address the remaining issues. Accordingly, we reverse and remand for further proceedings.