NUMBER
13-05-131-CV

                                 COURT
OF APPEALS

                     THIRTEENTH
DISTRICT OF TEXAS

                         CORPUS CHRISTI B EDINBURG

 

STONEBRIDGE LIFE INSURANCE 

COMPANY, F/K/A J. C. PENNEY LIFE 

INSURANCE COMPANY, ET AL.,                                                  Appellants,

                                                             v.

GAYLE
G. PITTS, ET AL.,                                                               Appellees.

 

                    On appeal from the 214th District
Court

                                        of
Nueces County, Texas.

 

                                         MEMORANDUM
OPINION

 

Before Chief Justice
Valdez and Justices Hinojosa and Yañez

Memorandum Opinion by Chief Justice Valdez








Appellants,
Stonebridge Life Insurance Company (f/k/a J.C. Penney Life Insurance Company),
J.C. Penney Direct Marketing Services, Inc., and AEGON Special Markets Group,
Inc. (n/k/a AEGON Direct Marketing Services, Inc.), bring this interlocutory
appeal from the statewide certification of a class of consumers who purchased
accidental death and dismemberment (AADD@) insurance from appellants.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(3) (Vernon Supp. 2005).  Appellants complain that the trial court
erred in certifying the class action for the following reasons:  (1) individual issues will predominate over
common issues; (2) the trial court did not conduct a rigorous analysis and the
certification order is inadequate; (3) a class action is not a superior method
of resolving this dispute; and (4) the class representatives do not satisfy the
typicality requirement.   We affirm.

Background

Appellants market
and sell ADD insurance policies to individual consumers over the
telephone.  Appellants purchase consumer
information, including names, telephone numbers, credit card account numbers,
and bank account information from other businesses, primarily issuers of credit
cards.  Appellants then call the
consumers whose information they have acquired and, using a standardized
telemarketing script, offer ADD insurance policies on a free sixty-day or
ninety-day trial basis.  Consumers are
told that, if they do not cancel their policies after the expiration of the
trial period, their enrollment will continue and they will be billed for the
premiums.  Appellees contend, however,
that the consumers are never informed that their credit card information is
already known to appellants and that their pre-existing credit card accounts
will be billed automatically  if they do
not affirmatively act to cancel the policy. 









Appellees, a
group of consumers who purchased these ADD policies by consenting to the free
trial enrollment, filed a class action petition against appellants alleging
that appellants improperly charged appellees=
credit card accounts for the insurance premiums after the expiration of the
trial period.  Appellees originally
sought to classify a nationwide class of plaintiffs with the following causes
of action:  (1) money had and received,
(2) conspiracy, and (3) violations of the Texas Theft Liability Act.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 134.001 (Vernon Supp. 2005).  The trial court certified the nationwide
class; appellants appealed this certification to this Court.

During that
appeal, this Court concluded that the trial court failed to analyze potential
conflicts of law between the fifty states represented in the nationwide class,
and held that Aappellees failed to show that common issues of law
or fact predominate@ given appellees= failure
to address conflict of law issues.  See
J.C. Penney v. Pitts, 139 S.W.3d 455, 462 (Tex. App.BCorpus Christi 2004, no pet.).   We therefore reversed the certification
order and remanded to the trial court to properly conduct this conflict of law
analysis.  See id.

On remand,
appellees amended their petition to assert only a single cause of action, money
had and received, and sought certification of a class composed of only Texas
consumers.  The trial court held another
certification hearing and subsequently approved the following class definition:

All individuals in Texas, (1) from whom Defendants
received premium payments for (ADD) insurance from November 28, 1996, until the
date of certification, (2) by means of either a credit card charge or bank
account debit initiated by any Defendant, (3) after a telemarketing contact
initiated by Defendants, (4) who did not provide written authorization prior to
Defendants= receipt of payment, and (5) who have not made a
claim or received benefits due to making any claim from Defendants under any
ADD policy.

 

As the trial
court characterized the case, there is only one liability issue to be decided:
whether appellants obtained money which in equity belongs to the class members
by charging their credit cards or debiting their bank accounts for ADD
insurance premiums.








The trial court
determined the class should be an Aopt-out@ class and provided requirements for notice to be
sent to all potential class members.  The
court also made findings of fact and conclusions of law regarding the elements
of class certification (i.e., numerosity, commonality, typicality, adequacy of
class representatives, and predominance and superiority) and determined that
because only a Texas class had been certified, further conflict of law analysis
was unnecessary.  The certification order
also covered elements of the trial plan, in particular, discovery issues, class
claims and defenses, and damages. 

Cause of
Action

The sole cause of
action now asserted by appellees is money had and received.  Money had and received is an equitable action
that may be maintained to prevent unjust enrichment when one person obtains
money, which in equity and good conscience belongs to another.  Pitts, 139 S.W.3d at 462 n.4 (citing Staats
v. Miller, 243 S.W.2d 686, 687 (1951); 
Phippen v. Deere & Co., 965 S.W.2d 713, 725 (Tex. App.BTexarkana 1998, no pet.)).  A cause of action for money had and received
is not based on wrongdoing but instead, "looks only to the justice of the
case and inquires whether the defendant has received money which rightfully
belongs to another."  Amoco Prod.
Co. v. Smith, 946 S.W.2d 162, 164 (Tex. App.BEl
Paso 1997, no writ).  It is essentially
an equitable doctrine applied to prevent unjust enrichment. Hunt v. Baldwin,
68 S.W.3d 117, 132 (Tex. App.BHouston [14th Dist.] 2001, no pet.).    

Standard of
Review








In Texas, class
actions are to be certified in accordance with the requirements of rule 42 of
the Texas Rules of Civil Procedure.  See
Tex. R. Civ. P. 42.   A trial court's ruling on class
certification is reviewed by this Court for an abuse of discretion.  See Southwestern Ref. Co. v. Bernal,
22 S.W.3d 425, 439 (Tex. 2000).  However,
we do not indulge every presumption in favor of the trial court's ruling
because actual "compliance with [Texas Rule of Civil Procedure] 42 must be
demonstrated rather than presumed." Henry Schein, Inc. v. Stromboe,
102 S.W.3d 675, 691 (Tex. 2002); Pitt, 139 S.W.3d at 459. Because rule
42 was patterned after the federal rule, "federal decisions and
authorities interpreting federal class action requirements are persuasive in
Texas actions." Ford Motor Co. v. Sheldon, 22 S.W.3d 444, 452 (Tex.
2000); Pitt, 139 S.W.3d at 459. 
The trial court additionally "must perform a 'rigorous analysis'
before ruling on a class certification to determine whether all prerequisites
to certification have been met," and 
the appellate court is able to evaluate the adequacy of this rigorous
analysis on appeal.  See Bernal,
22 S.W.3d at 435.

Rule 42
certification involves a two-step process. 
First, the proposed class must meet rule 42(a)=s four requirements: 
(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of
representation.  See Tex. R. Civ. P. 42(a).  Second, the class must meet the requirements
of one of three subdivisions of rule 42(b); in this case, under rule 42(b)(3),
the trial court must establish the elements of predominance of common issues
over individual issues and the superiority of a class action as opposed to
other forms of litigation.  See Tex. R. Civ. P. 42(b)(3).  

Predominance








Appellants argue
in their first issue that the trial court=s order certifying the class action fails to
demonstrate compliance with rule 42(b)(3)=s requirement of predominance.  The predominance requirement "prevents
class action litigation when the sheer complexity and diversity of individual
issues would overwhelm or confuse a jury or severely compromise a party's
ability to present viable claims or defenses."  Bernal, 22 S.W.3d at 434.  "The test for predominance is not
whether common issues outnumber uncommon issues but . . . 'whether common or
individual issues will be the object of most of the efforts of the
litigants.'"  Id. (quoting Cent.
Power & Light Co. v. City of San Juan, 962 S.W.2d 602, 610 (Tex. App.BCorpus Christi 1998, pet. dism'd w.o.j.)); see
Pitts, 139 S.W.3d at 460-61. 
Ideally, a judgment in favor of the named plaintiffs should decisively
settle the entire controversy, and all that should remain is for other class
members to file proofs of claim.  Peltier
Enters. v. Hilton, 51 S.W.3d 616, 622 (Tex. App.BTyler 2000, pet. denied).

Here, the trial
court determined that the claims of all class members arose from a common
course of conduct by appellants that was identical with regard to each
individual consumer, i.e., each consumer was subjected to a common
telemarketing effort that included prepackaged telemarketing scripts, which
were not deviated from by appellants= representatives. 
The question that now remains to be decided is whether appellants= use of consumer responses to those scripts as
implied consent to automatic credit-card-debiting constitutes a cause of action
for money had and received.  If the
finder of fact determines that the use of these scripts, followed by actual
debiting of accounts, constitutes an action for money had and received, the
class members will have established a common right to relief.  If, however, the finder of fact determines
that the facts alleged do not constitute a claim for money had and received,
the litigation with regard to all class members will be over, and the class
action will have efficiently disposed of all these claims with a single
inquiry.  








Appellants argue
that predominance has not been established because whether consumers authorized
the charges to their credit card accounts is Aa
question with only individual answers, determinable only by reference to the
different facts and circumstances applicable to each specific individual who
was billed.@  They also
argue that they have asserted various defenses which raise individual issues
requiring examination of individual class members=
knowledge or conduct.  Appellants cite Kenro,
Inc. v. Fax Daily, Inc., 962 F. Supp. 1162, 1169 (S.D. Ind. 1997), and Forman
v. Data Transfer, Inc. 164 F.R.D. 400, 404 (E.D. Pa. 1995), in support of
these assertions. We note, however, that in both these cases, the question of
whether the class members had given permission to receive services was a
central element necessary to the disposition of the causes of action
asserted.  Kenro, 962 F. Supp. at
1169; Forman, 164 F.R.D. at 404. 
Here, it is undisputed that the consumers initially consented to
enrollment in the trial program; the question is whether by consenting to a
trial period, consumers authorized consent to automatic billing without
explicit notice from appellants.  We see
from the record that appellants received permission from class members to
initially enroll them in the trial period for the insurance policy; appellants,
in fact, presumed they had received such permission in order to obtain the
class members= money. 
Although the monthly debiting process is automatic (triggered, not by individual
express permission, but by the expiration of the trial period), appellants
nonetheless insist that an individualized resolution of the question of consent
is necessary with regard to each class member.








We find the facts
of this case more in line with those of Smilow v. Southwestern Bell Mobile
Syst., Inc., 323 F.3d 32 (1st Cir. 2000). 
In Smilow, the First Circuit Court of Appeals reversed the
decertification of a class of consumers, all of whom had agreed to the same
wireless phone contract.  Id. at
34.  The language involved in each
contract was identical; obviously, permission to bill the cellular consumers
was then assumed by the cellular provider. 
The class representative, however, alleged that the class members were
all being unfairly billed under their contracts for charges they had not
anticipated, as a dispute about the interpretation of terms in the contract had
arisen.  Id. at 35.  The court of appeals determined that the
class satisfied the predominance requirement, given that the rules require Amerely that common issues predominate, not that all
issues be common to the class.@   Id. at
39.   Furthermore, the presence of some
potential individual waiver determinations did not defeat the predominance of
the primary claim:  A[c]ourts traditionally have been reluctant to deny
class action status under [the federal equivalent of rule 42(b)(3)] simply
because affirmative defenses may be available against individual members.@  Id.
(citing 32B Am. Jur. 2d Federal Courts
' 2018 & n.1 (2002); Hoxworth v. Blinder,
Robinson & Co., 980 F.2d 912, 924 (3d Cir. 1992); Cameron v. E.M.
Adams & Co., 547 F.2d 473, 478 (9th Cir. 1976)).  The same is also true for individual
damage determinations :  AWhere, as here, common questions predominate
regarding liability, then courts generally find the predominance requirement to
be satisfied even if individual damages issues remain.@  Id.
at 40 (citing Wal‑Mart Stores, Inc. v. Visa USA Inc., 280 F.3d
124, 139 (2d Cir. 2001); Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456
(3d Cir. 1977); Gold Strike Stamp Co. v. Christensen, 436 F.2d 791, 798
(10th Cir. 1970); Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir.
1975)).  








We agree with the
conclusions reached by the Smilow court, and  conclude that this case does not present
issues of what each class member understood or agreed to, but rather presents
the issue of whether appellants= reliance on the class members= enrollment in the trial program to debit their
credit card accounts was equitable and just.  Accordingly, we hold the predominance
requirement of rule 42(b)(3) is satisfied. 
Appellants= first issue is overruled. 

Rigorous
Analysis

By their second
issue, appellants assert that the trial court did not conduct a rigorous
analysis and that the certification order is therefore inadequate.  They also allege that the trial plan included
in the order violates the requirements established by the supreme court.

We first address
the issue of rigorous analysis.  In Bernal,
the supreme court described the Arigorous analysis@ that
a trial court must undergo when certifying a class action and noted that the
court must make Aa meaningful determination of certification issues
by going beyond the pleadings to understand the claims, defenses, relevant
facts, and substantive law.@  Bernal,
22 S.W.3d at 435.  Class certification
orders should reflect the rigorous analysis undergone by the trial court in
each certification proceeding, and the rules of civil procedure require that
the certification order demonstrate the following:

(i) the elements of each claim or defense asserted
in the pleadings;

(ii) any issues of law or fact common to the class
members;

(iii) any issues of law or fact affecting only
individual class members;

(iv) the issues that will be the object of most of
the efforts of the litigants and the court;

(v) other available methods of adjudication that
exist for the controversy;

(vi) why the issues common to the members of the
class do or do not predominate over individual issues;

(vii) why a class action is or is not superior to
other available methods for the fair and efficient adjudication of the
controversy; and








(viii) if a class is certified, how the class claims
and any issues affecting only individual members, raised by the claims or
defenses asserted in the pleadings, will be tried in a manageable, time
efficient manner.

 

See Tex. R. Civ. P. 42(c)(1).  

We have reviewed the order with these elements in mind.  Here, the only cause of action asserted was
money had and received, which the trial court discusses at length in the
order.  The order also discusses the
defenses asserted by appellants, the legal and factual issues relevant to the
litigation, the elements of predominance and superiority, and the consequence
of litigating these issues on an individual basis.  The certification order includes a section on
the provision of notice to all class members and outlines how the litigation
will be conducted.  Having thoroughly
reviewed the contents of this order, we do not find any elements of rule
42(c)(1) to be missing and conclude that this order is therefore satisfactory
under the rule.[1]  See id.; Bernal, 22 S.W.3d at
435.  








Appellants
specifically complain that Athe trial plan erroneously purports to determine
liability for the class based on jury findings only for the two class
representatives,@ and denies appellants the right to seek discovery from
unnamed class members and unduly restricts appellants from presenting viable
defenses.   Appellants essentially argue
that it is fundamentally unfair to have liability issues resolved with regard
to the entire class based only on the claims of a small number of
representatives.  However, as this is the
very purpose of the class action mechanism, a well-established and legal method
of efficiently resolving disputes involving large numbers of plaintiffs, see,
e.g., Alford Chevrolet‑Geo v. Jones, 91 S.W.3d 396, 406-07
(Tex. App.BTexarkana 2002, pet. denied); Weatherly v.
Deloitte & Touche, 905 S.W.2d 642, 654 (Tex. App.BHous. [14th Dist.] 1995, writ dis'd w.o.j.), we
decline to address the fundamental unfairness argument as raised. 

Within the class
action mechanism, however, there are important safeguards for defendants that
we must review.  For example, due process
requires that defendants be permitted to take appropriate discovery of absent
class members and to present evidence at trial reasonably calculated to defeat
the class members= claims.  See
Peltier, 51 S.W.3d at 625. 
Therefore, the discovery limitations imposed by the certification must
be appropriate and reasonable.   See
id.

The trial plan
notes that the evidence necessary Ato decide the class claims of money had and received
and the Defendants= defenses is comprised of documents in the
Defendants= possession,@ and therefore the claim and defenses Acan be proven by objective proof without resorting
to taking each class members= deposition.@  The trial
plan does allow for class-wide discovery in the form of standard written
discovery, if necessary.








Appellants argue
that this level of discovery is inadequate, as they require individual
responses from each class member in order Ato decide who did, and who did not, give permission@ to be enrolled in the insurance program, as well as
which class members knew about the charge on their monthly statement and
approved it.  We disagree, given the sole
cause of action asserted by the plaintiffs; money had and received is a purely
equitable remedy and does not require plaintiffs to establish the elements of
consent or reliance.   See Staats,
243 S.W.2d at 687‑88 (holding that the only thing to be proved in a claim
for money had and received "is that defendant holds money which in equity
and good conscience belongs to [the plaintiff]").  The question presented by this litigation is
not whether appellants received permission to enroll the class members in their
insurance program; as stated above, appellants presumed consumers= consent in order to begin billing.  Furthermore, the permission appellants
received from the class members was identical in each case because it was a Ayes or no@-type response to a scripted series of
questions.  Thus, the liability question
presented is whether this permission could equitably be used to begin
automatically billing those members using previously-received but undisclosed
personal credit and banking information.  
What the individual consumer intended or thought when answering Ayes@ to the enrollment questions is irrelevant because
the sole cause of action simply asks what equity would allow.  See id. (AThe question, in an action for money had and
received, is to which party does the money, in equity, justice and law, belong.@). 

Finally, we
conclude that this trial plan does not prevent appellants from asserting
defenses.  Appellants are in possession
of the recorded portion of the telemarketing conversations, enrollment
documents and confirmation letters, policy documents, scripts and instructions
for telemarketers, call logs, and numerous other items, all of which are
relevant to appellants= defenses and which demonstrate that they can gather
the necessary evidence in support of their defenses without resorting to deposing
each class member on an individual basis. 
Of appellants= asserted defenses that may apply to this equitable
claim, there is no evidence that the discovery plan prevents appellants from
fully developing and litigating their elements.








Given that this
is a case in which individual questions of permission and consent are rendered
moot both by the cause of action asserted and the conduct of appellants
themselves, we conclude that the trial plan, including the limitations on
discovery, is reasonable.  Appellants= second issue is therefore overruled. 

Superiority

By their third
issue, appellants argue that the class certification failed to satisfy the
requirement of superiority.  








According to rule
42(b), a class action must be superior to other available methods for the fair
and efficient adjudication of the controversy. 
See Tex. R. Civ. P. 42(b)(3).  In determining whether class action is
superior to other methods of adjudication, the "trial court should
consider what other procedures exist for disposing of the dispute and compare
those to the judicial resources and potential prejudice to absent class members
involved in pursuing the class action." 
See Rainbow Group, Ltd. v. Johnson, 990 S.W.2d 351, 360 (Tex.
App.BAustin 1999, pet. denied); Life Ins. Co. of the
Southwest v. Brister, 722 S.W.2d 764, 772 (Tex. App.BFort Worth 1986, no writ).  Other methods of adjudication include
individual suits and the availability and practicability of joinder and
intervention. See Reserve Life Ins. Co. v. Kirkland, 917 S.W.2d 836, 845
(Tex. App.BHouston [14th Dist.] 1996, no writ); Brister,
772 S.W.2d at 772.  A class action is
superior to other forms of adjudication when the benefits of class‑wide
resolution of common issues are outweighed by the difficulties that might arise
in the management of the class.  See
Nissan Motor Co., Ltd. v. Fry, 27 S.W.3d 573, 585‑86 (Tex. App.BCorpus Christi 2000, pet. denied).  In making its superiority determination, the
trial court may consider whether (1) class members have an interest in
resolving the common issues by class action, (2) class members will benefit
from discovery already commenced, and (3) the court has invested time and
effort in familiarizing itself with the issues in dispute.  See Tana Oil & Gas Corp. v. Bates,
978 S.W.2d 735, 743 (Tex. App.BAustin 1998, no pet.).  A class action should be considered a
superior method if it eliminates or reduces the threat of repetitive
litigation, prevents the inconsistent resolution of similar cases, and provides
a means of redress for individual claims that are too small to make independent
actions economically viable.   Ford
Motor Co. v. Sheldon, 22 S.W.3d 444, 452 (Tex. 2000).  

This case clearly
fits the requirements of superiority. 
The litigation turns exclusively on the answer to a single liability question,
i.e., appellants= liability under the equitable claim of money had
and received.  If a jury or fact finder
determines that appellants are not liable, then the litigation is over and the
class action will have served to efficiently dispose of all members= claims against appellants in a single
proceeding.  If, however, a jury or fact
finder does find liability, then all that remains is for class members to file
proofs of claim; no further litigation will be necessary.  See id. 








Furthermore, this
litigation has been ongoing for over four years, during which time a
substantial amount of discovery has occurred, which class members can clearly
benefit from.  See Tana Oil & Gas,
978 S.W.2d at 743.  The duration of these
proceedings has also provided the trial court with ample opportunity to develop
familiarity with the law and facts pertinent to the case.  See id.  It is 
economically infeasible for each individual class member to bring
individual claims against appellants, given that even if liability is
established, individual damage awards may be under $100.  See Ford Motor Co., 22 S.W.3d at 452.

We conclude the
class action is a superior method of adjudication in these circumstances.  Appellants= third
issue is overruled. 

Typicality

By their final
issue, appellants argue that the class representatives do not satisfy rule
42(a)(3)=s typicality requirement.              

Generally, rule
42(a)(3)=s typicality requirement mandates that the class
representatives possess the same interests and suffer the same injury as the
class.  East Tex. Motor Freight Sys.,
Inc. v. Rodriguez, 431 U.S. 395, 403 (1977); Nissan Motor Co., 27
S.W.3d at 582.  The class representative
must not have interests antagonistic to those of the rest of the class.  Nissan Motor Co., 27 S.W.3d at
582.   The claims of class
representatives and non-representatives need not be identical or perfectly
coextensive, just substantially similar. See Cedar Crest Funeral Home, Inc.
v. Lashley, 889 S.W.2d 325, 331 (Tex. App.BDallas
1993, no writ).  Only a conflict that
goes to the very subject matter of the litigation will defeat a party's claim
of representative status.  Nissan
Motor Co., 27 S.W.3d at 582.








Appellants attack
the typicality of the class representatives because several representatives
either claim to have forgotten receiving a telemarketing call or deny ever
having received such a call.  However,
the record demonstrates that appellants use a uniform script in their
telemarketing practices that result in charges to class members= accounts.  It
is undisputed that appellants read from a uniform script to each contacted
person, and that appellants= telemarketing representatives were forbidden from
deviating from the script.  It is also
undisputed that all class members were enrolled and charged for the
policies.  A company representative
testified at the certification hearing that if the class representatives
received charges on their credit card accounts, it could be assumed that a
licensed agent of appellants had enrolled them on the phone.  As the claim made by the class does not
allege that appellants charged the accounts of consumers without contacting and
enrolling them, the matter of whether the class representatives perfectly
recall the conversations in question is irrelevant to establish
typicality.  Clearly the representatives
were enrolled, charged, and now claim to suffer the same injury as the
remaining class members, thus satisfying the requirements of typicality.  See Rodriguez, 431 U.S. at 403; Nissan
Motor Co., 27 S.W.3d at 582.

Appellants= fourth issue is overruled. 

Conclusion

Having overruled
all of appellants= issues, we affirm the class certification order
entered by the trial court. 

 

                                                     


ROGELIO
VALDEZ

Chief
Justice

 

 

Memorandum Opinion
delivered and 

filed this 18th day of
May, 2006.

 











[1]As an additional safeguard,  the trial court designated this class as an
"opt out" class, and required that the class counsel send each
prospective class member notice of the litigation, which must include (1) a
description of the nature of the class action; (2) a description of the claims
of the class; (3) a description of the rights of class members to intervene in
this lawsuit with separate counsel, if they so choose; and (4) a description of
the rights of the class members to opt out of the class and the procedure for
doing so. The trial court stated this was required in order to "provide
the option to those individuals who desire the ADD insurance that they can opt
out of the Class."