STONEBRIDGE LIFE INSURANCE COMPANY, f/k/a J.C. Penney Life Insurance Company, et al., Appellants,

v.

Gayle G. PITTS, et al., Appellees.

No. 13–05–131–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

May 18, 2006.

Rehearing Overruled June 15, 2006.

pute; and (4) the class representatives do not satisfy the typicality requirement. We affirm.

James David Brown, Joel W. Reese, Winstead, Dechrest & Minick, P.C., Dallas, Craig T. Enoch, Winstead, Sechrest & Minick, P.C., Austin, Frank E. Weathered, Dunn, Weathered, Coffey, Rivera & Kasperities, P.C., Atty's at Law, Corpus Christi, for Appellants.

Tamera L. Venzke, John P. Venzke, The Venzke Law Firm, LLP, Houston, Stephen Gardner, Atty. At Law, Dallas, David H. Berg, Berg & Androphy, Houston, J.A. "Tony" Canales, Canales & Simonson, P.C., Corpus Christi, for Appellees.

Before Chief Justice VALDEZ and Justices HINOJOSA and YAÑEZ.

## MEMORANDUM OPINION

Memorandum Opinion by Chief Justice VALDEZ.

Appellants, Stonebridge Life Insurance Company (f/k/a J.C. Penney Life Insurance Company), J.C. Penney Direct Marketing Services, Inc., and AEGON Special Markets Group, Inc. (n/k/a AEGON Direct Marketing Services, Inc.), bring this interlocutory appeal from the statewide certification of a class of consumers who purchased accidental death and dismemberment ("ADD") insurance from appellants. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(3) (Vernon Supp. 2005). Appellants complain that the trial court erred in certifying the class action for the following reasons: (1) individual issues will predominate over common issues; (2) the trial court did not conduct a rigorous analysis and the certification order is inadequate; (3) a class action is not a superior method of resolving this dis-

## Background

Appellants market and sell ADD insurance policies to individual consumers over the telephone. Appellants purchase consumer information, including names, telephone numbers, credit card account numbers, and bank account information from other businesses, primarily issuers of credit cards. Appellants then call the consumers whose information they have acquired and, using a standardized telemarketing script, offer ADD insurance policies on a free sixty-day or ninety-day trial basis. Consumers are told that, if they do not cancel their policies after the expiration of the trial period, their enrollment will continue and they will be billed for the premiums. Appellees contend, however, that the consumers are never informed that their credit card information is already known to appellants and that their pre-existing credit card accounts will be billed automatically if they do not affirmatively act to cancel the policy.

Appellees, a group of consumers who purchased these ADD policies by consenting to the free trial enrollment, filed a class action petition against appellants alleging that appellants improperly charged appellees' credit card accounts for the insurance premiums after the expiration of the trial period. Appellees originally sought to classify a nationwide class of plaintiffs with the following causes of action: (1) money had and received, (2) conspiracy, and (3) violations of the Texas Theft Liability Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 134.001 (Vernon Supp.2005). The trial court certified the nationwide class; appellants appealed this certification to this Court.

During that appeal, this Court concluded that the trial court failed to analyze potential conflicts of law between the fifty states represented in the nationwide class, and held that "appellees failed to show that common issues of law or fact predominate" given appellees' failure to address conflict of law issues. *See J.C. Penney v. Pitts,* 139 S.W.3d 455, 462 (Tex.App.-Corpus Christi 2004, no pet.). We therefore reversed the certification order and remanded to the trial court to properly conduct this conflict of law analysis. *See id.*

On remand, appellees amended their petition to assert only a single cause of action, money had and received, and sought certification of a class composed of only Texas consumers. The trial court held another certification hearing and subsequently approved the following class definition:

> All individuals in Texas, (1) from whom Defendants received premium payments for (ADD) insurance from November 28, 1996, until the date of certification, (2) by means of either a credit card charge or bank account debit initiated by any Defendant, (3) after a telemarketing contact initiated by Defendants, (4) who did not provide written authorization prior to Defendants' receipt of payment, and (5) who have not made a claim or received benefits due to making any claim from Defendants under any ADD policy.

As the trial court characterized the case, there is only one liability issue to be decided: whether appellants obtained money which in equity belongs to the class members by charging their credit cards or debiting their bank accounts for ADD insurance premiums.

The trial court determined the class should be an "opt-out" class and provided requirements for notice to be sent to all potential class members. The court also made findings of fact and conclusions of law regarding the elements of class certification (i.e., numerosity, commonality, typicality, adequacy of class representatives, and predominance and superiority) and determined that because only a Texas class had been certified, further conflict of law analysis was unnecessary. The certification order also covered elements of the trial plan, in particular, discovery issues, class claims and defenses, and damages.

### Cause of Action

The sole cause of action now asserted by appellees is money had and received. Money had and received is an equitable action that may be maintained to prevent unjust enrichment when one person obtains money, which in equity and good conscience belongs to another. *Pitts,* 139 S.W.3d at 462 n. 4 (citing *Staats v. Miller,* 150 Tex. 581, 243 S.W.2d 686, 687 (1951); *Phippen v. Deere & Co.,* 965 S.W.2d 713, 725 (Tex.App.-Texarkana 1998, no pet.)). A cause of action for money had and received is not based on wrongdoing but instead, "looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." *Amoco Prod. Co. v. Smith,* 946 S.W.2d 162, 164 (Tex.App.-El Paso 1997, no writ). It is essentially an equitable doctrine applied to prevent unjust enrichment. *Hunt v. Baldwin,* 68 S.W.3d 117, 132 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

### Standard of Review

In Texas, class actions are to be certified in accordance with the requirements of rule 42 of the Texas Rules of Civil Procedure. *See* TEX.R. CIV. P. 42. A trial court's ruling on class certification is reviewed by this Court for an abuse of discretion. *See Southwestern Ref. Co. v. Bernal,* 22 S.W.3d 425, 439 (Tex.2000).

However, we do not indulge every presumption in favor of the trial court's ruling because actual "compliance with [Texas Rule of Civil Procedure] 42 must be demonstrated rather than presumed." *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 691 (Tex.2002); *Pitts,* 139 S.W.3d at 459. Because rule 42 was patterned after the federal rule, "federal decisions and authorities interpreting federal class action requirements are persuasive in Texas actions." *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 452 (Tex.2000); *Pitts,* 139 S.W.3d at 459. The trial court additionally "must perform a 'rigorous analysis' before ruling on a class certification to determine whether all prerequisites to certification have been met," and the appellate court is able to evaluate the adequacy of this rigorous analysis on appeal. *See Bernal,* 22 S.W.3d at 435.

Rule 42 certification involves a two-step process. First, the proposed class must meet rule 42(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* TEX.R. CIV. P. 42(a). Second, the class must meet the requirements of one of three subdivisions of rule 42(b); in this case, under rule 42(b)(3), the trial court must establish the elements of predominance of common issues over individual issues and the superiority of a class action as opposed to other forms of litigation. *See* TEX.R. CIV. P. 42(b)(3).

### Predominance

▆▆▆ Appellants argue in their first issue that the trial court's order certifying the class action fails to demonstrate compliance with rule 42(b)(3)'s requirement of predominance. The predominance requirement "prevents class action litigation when the sheer complexity and diversity of individual issues would overwhelm or confuse a jury or severely compromise a par-ty's ability to present viable claims or defenses." *Bernal,* 22 S.W.3d at 434. "The test for predominance is not whether common issues outnumber uncommon issues but ... 'whether common or individual issues will be the object of most of the efforts of the litigants.'" *Id.* (quoting *Cent. Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 610 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.)); *see Pitts,* 139 S.W.3d at 460–61. Ideally, a judgment in favor of the named plaintiffs should decisively settle the entire controversy, and all that should remain is for other class members to file proofs of claim. *Peltier Enters. v. Hilton,* 51 S.W.3d 616, 622 (Tex.App.-Tyler 2000, pet. denied).

Here, the trial court determined that the claims of all class members arose from a common course of conduct by appellants that was identical with regard to each individual consumer, i.e., each consumer was subjected to a common telemarketing effort that included prepackaged telemarketing scripts, which were not deviated from by appellants' representatives. The question that now remains to be decided is whether appellants' use of consumer responses to those scripts as implied consent to automatic credit-card-debiting constitutes a cause of action for money had and received. If the finder of fact determines that the use of these scripts, followed by actual debiting of accounts, constitutes an action for money had and received, the class members will have established a common right to relief. If, however, the finder of fact determines that the facts alleged do not constitute a claim for money had and received, the litigation with regard to all class members will be over, and the class action will have efficiently disposed of all these claims with a single inquiry.

Appellants argue that predominance has not been established because whether consumers authorized the charges to their

credit card accounts is "a question with only individual answers, determinable only by reference to the different facts and circumstances applicable to each specific individual who was billed." They also argue that they have asserted various defenses which raise individual issues requiring examination of individual class members' knowledge or conduct. Appellants cite *Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1169 (S.D.Ind.1997), and *Forman v. Data Transfer, Inc.* 164 F.R.D. 400, 404 (E.D.Pa.1995), in support of these assertions. We note, however, that in both these cases, the question of whether the class members had given permission to receive services was a central element necessary to the disposition of the causes of action asserted. *Kenro,* 962 F.Supp. at 1169; *Forman,* 164 F.R.D. at 404. Here, it is undisputed that the consumers initially consented to enrollment in the trial program; the question is whether by consenting to a trial period, consumers authorized consent to automatic billing without explicit notice from appellants. We see from the record that appellants received permission from class members to initially enroll them in the trial period for the insurance policy; appellants, in fact, presumed they had received such permission in order to obtain the class members' money. Although the monthly debiting process is automatic (triggered, not by individual express permission, but by the expiration of the trial period), appellants nonetheless insist that an individualized resolution of the question of consent is necessary with regard to each class member.

■ We find the facts of this case more in line with those of *Smilow v. Southwestern Bell Mobile Syst., Inc.,* 323 F.3d 32 (1st Cir.2003). In *Smilow,* the First Circuit Court of Appeals reversed the decertification of a class of consumers, all of whom had agreed to the same wireless phone contract. *Id.* at 34. The language involved in each contract was identical; obviously, permission to bill the cellular consumers was then assumed by the cellular provider. The class representative, however, alleged that the class members were all being *unfairly* billed under their contracts for charges they had not anticipated, as a dispute about the interpretation of terms in the contract had arisen. *Id.* at 35. The court of appeals determined that the class satisfied the predominance requirement, given that the rules require "merely that common issues predominate, not that all issues be common to the class." *Id.* at 39. Furthermore, the presence of some potential individual waiver determinations did not defeat the predominance of the primary claim: "[c]ourts traditionally have been reluctant to deny class action status under [the federal equivalent of rule 42(b)(3) ] simply because affirmative defenses may be available against individual members." *Id.* (citing 32B Am.Jur.2d Federal Courts § 2018 & n. 1 (2002); *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 924 (3d Cir.1992); *Cameron v. E.M. Adams & Co.,* 547 F.2d 473, 478 (9th Cir.1976)). The same is also true for individual damage determinations: "Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Id.* at 40 (citing *Wal–Mart Stores, Inc. v. Visa USA Inc.,* 280 F.3d 124, 139 (2d Cir.2001); *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir.1977); *Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791, 798 (10th Cir.1970); *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975)).

We agree with the conclusions reached by the *Smilow* court, and conclude that this case does not present issues of what each class member understood or agreed

to, but rather presents the issue of whether appellants' reliance on the class members' enrollment in the trial program to debit their credit card accounts was equitable and just. Accordingly, we hold the predominance requirement of rule 42(b)(3) is satisfied. Appellants' first issue is overruled.

### Rigorous Analysis

■ By their second issue, appellants assert that the trial court did not conduct a rigorous analysis and that the certification order is therefore inadequate. They also allege that the trial plan included in the order violates the requirements established by the supreme court.

We first address the issue of rigorous analysis. In *Bernal,* the supreme court described the "rigorous analysis" that a trial court must undergo when certifying a class action and noted that the court must make "a meaningful determination of certification issues by going beyond the pleadings to understand the claims, defenses, relevant facts, and substantive law." *Bernal,* 22 S.W.3d at 435. Class certification orders should reflect the rigorous analysis undergone by the trial court in each certification proceeding, and the rules of civil procedure require that the certification order demonstrate the following:

(i) the elements of each claim or defense asserted in the pleadings;

(ii) any issues of law or fact common to the class members;

(iii) any issues of law or fact affecting only individual class members;

(iv) the issues that will be the object of most of the efforts of the litigants and the court;

(v) other available methods of adjudication that exist for the controversy;

(vi) why the issues common to the members of the class do or do not predominate over individual issues;

(vii) why a class action is or is not superior to other available methods for the fair and efficient adjudication of the controversy; and

(viii) if a class is certified, how the class claims and any issues affecting only individual members, raised by the claims or defenses asserted in the pleadings, will be tried in a manageable, time efficient manner.

*See* TEX. R. CIV. P. 42(c)(1).

We have reviewed the order with these elements in mind. Here, the only cause of action asserted was money had and received, which the trial court discusses at length in the order. The order also discusses the defenses asserted by appellants, the legal and factual issues relevant to the litigation, the elements of predominance and superiority, and the consequence of litigating these issues on an individual basis. The certification order includes a section on the provision of notice to all class members and outlines how the litigation will be conducted. Having thoroughly reviewed the contents of this order, we do not find any elements of rule 42(c)(1) to be missing and conclude that this order is therefore satisfactory under the rule.[1] *See id.; Bernal,* 22 S.W.3d at 435.

---

1. As an additional safeguard, the trial court designated this class as an "opt out" class, and required that the class counsel send each prospective class member notice of the litigation, which must include (1) a description of the nature of the class action; (2) a description of the claims of the class; (3) a description of the rights of class members to intervene in this lawsuit with separate counsel, if they so choose; and (4) a description of the rights of the class members to opt out of the class and the procedure for doing so. The trial court stated this was required in order to "provide the option to those individuals who desire the ADD insurance that they can opt out of the Class."

Appellants specifically complain that "the trial plan erroneously purports to determine liability for the class based on jury findings only for the two class representatives," and denies appellants the right to seek discovery from unnamed class members and unduly restricts appellants from presenting viable defenses. Appellants essentially argue that it is fundamentally unfair to have liability issues resolved with regard to the entire class based only on the claims of a small number of representatives. However, as this is the very purpose of the class action mechanism, a well-established and legal method of efficiently resolving disputes involving large numbers of plaintiffs, *see, e.g., Alford Chevrolet–Geo v. Jones*, 91 S.W.3d 396, 406–07 (Tex.App.-Texarkana 2002, pet. denied); *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 654 (Tex.App.-Hous. [14th Dist.] 1995, writ dis'd w.o.j.), we decline to address the fundamental unfairness argument as raised.

Within the class action mechanism, however, there are important safeguards for defendants that we must review. For example, due process requires that defendants be permitted to take appropriate discovery of absent class members and to present evidence at trial reasonably calculated to defeat the class members' claims. *See Peltier*, 51 S.W.3d at 625. Therefore, the discovery limitations imposed by the certification must be appropriate and reasonable. *See id.*

The trial plan notes that the evidence necessary "to decide the class claims of money had and received and the Defendants' defenses is comprised of documents in the Defendants' possession," and therefore the claim and defenses "can be proven by objective proof without resorting to taking each class members' deposition." The trial plan does allow for class-wide discovery in the form of standard written discovery, if necessary.

Appellants argue that this level of discovery is inadequate, as they require individual responses from each class member in order "to decide who did, and who did not, give permission" to be enrolled in the insurance program, as well as which class members knew about the charge on their monthly statement and approved it. We disagree, given the sole cause of action asserted by the plaintiffs; money had and received is a purely equitable remedy and does not require plaintiffs to establish the elements of consent or reliance. *See Staats*, 243 S.W.2d at 687–88 (holding that the only thing to be proved in a claim for money had and received "is that defendant holds money which in equity and good conscience belongs to [the plaintiff]"). The question presented by this litigation is not whether appellants received permission to enroll the class members in their insurance program; as stated above, appellants presumed consumers' consent in order to begin billing. Furthermore, the permission appellants received from the class members was identical in each case because it was a "yes or no"-type response to a scripted series of questions. Thus, the liability question presented is whether this permission could equitably be used to begin automatically billing those members using previously-received but undisclosed personal credit and banking information. What the individual consumer intended or thought when answering "yes" to the enrollment questions is irrelevant because the sole cause of action simply asks what equity would allow. *See id.* ("The question, in an action for money had and received, is to which party does the money, in equity, justice and law, belong.").

Finally, we conclude that this trial plan does not prevent appellants from asserting defenses. Appellants are in possession of

the recorded portion of the telemarketing conversations, enrollment documents and confirmation letters, policy documents, scripts and instructions for telemarketers, call logs, and numerous other items, all of which are relevant to appellants' defenses and which demonstrate that they can gather the necessary evidence in support of their defenses without resorting to deposing each class member on an individual basis. Of appellants' asserted defenses that may apply to this equitable claim, there is no evidence that the discovery plan prevents appellants from fully developing and litigating their elements.

Given that this is a case in which individual questions of permission and consent are rendered moot both by the cause of action asserted and the conduct of appellants themselves, we conclude that the trial plan, including the limitations on discovery, is reasonable. Appellants' second issue is therefore overruled.

### Superiority

■ By their third issue, appellants argue that the class certification failed to satisfy the requirement of superiority.

■ According to rule 42(b), a class action must be superior to other available methods for the fair and efficient adjudication of the controversy. *See* TEX.R. CIV. P. 42(b)(3). In determining whether class action is superior to other methods of adjudication, the "trial court should consider what other procedures exist for disposing of the dispute and compare those to the judicial resources and potential prejudice to absent class members involved in pursuing the class action." *See Rainbow Group, Ltd. v. Johnson,* 990 S.W.2d 351, 360 (Tex. App.-Austin 1999, pet. denied); *Life Ins. Co. of the Southwest v. Brister,* 722 S.W.2d 764, 772 (Tex.App.-Fort Worth 1986, no writ). Other methods of adjudication include individual suits and the availability and practicability of joinder and intervention. *See Reserve Life Ins. Co. v. Kirkland,* 917 S.W.2d 836, 845 (Tex.App.-Houston [14th Dist.] 1996, no writ); *Brister,* 722 S.W.2d at 772. A class action is superior to other forms of adjudication when the benefits of class-wide resolution of common issues are outweighed by the difficulties that might arise in the management of the class. *See Nissan Motor Co., Ltd. v. Fry,* 27 S.W.3d 573, 585–86 (Tex.App.-Corpus Christi 2000, pet. denied). In making its superiority determination, the trial court may consider whether (1) class members have an interest in resolving the common issues by class action, (2) class members will benefit from discovery already commenced, and (3) the court has invested time and effort in familiarizing itself with the issues in dispute. *See Tana Oil & Gas Corp. v. Bates,* 978 S.W.2d 735, 743 (Tex. App.-Austin 1998, no pet.). A class action should be considered a superior method if it eliminates or reduces the threat of repetitive litigation, prevents the inconsistent resolution of similar cases, and provides a means of redress for individual claims that are too small to make independent actions economically viable. *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 452 (Tex.2000).

This case clearly fits the requirements of superiority. The litigation turns exclusively on the answer to a single liability question, i.e., appellants' liability under the equitable claim of money had and received. If a jury or fact finder determines that appellants are not liable, then the litigation is over and the class action will have served to efficiently dispose of all members' claims against appellants in a single proceeding. If, however, a jury or fact finder does find liability, then all that remains is for class members to file proofs of claim; no further litigation will be necessary. *See id.*

Furthermore, this litigation has been ongoing for over four years, during which time a substantial amount of discovery has occurred, which class members can clearly benefit from. *See Tana Oil & Gas,* 978 S.W.2d at 743. The duration of these proceedings has also provided the trial court with ample opportunity to develop familiarity with the law and facts pertinent to the case. *See id.* It is economically infeasible for each individual class member to bring individual claims against appellants, given that even if liability is established, individual damage awards may be under $100. *See Ford Motor Co.,* 22 S.W.3d at 452.

We conclude the class action is a superior method of adjudication in these circumstances. Appellants' third issue is overruled.

### Typicality

By their final issue, appellants argue that the class representatives do not satisfy rule 42(a)(3)'s typicality requirement.

Generally, rule 42(a)(3)'s typicality requirement mandates that the class representatives possess the same interests and suffer the same injury as the class. *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Nissan Motor Co.,* 27 S.W.3d at 582. The class representative must not have interests antagonistic to those of the rest of the class. *Nissan Motor Co.,* 27 S.W.3d at 582. The claims of class representatives and non-representatives need not be identical or perfectly coextensive, just substantially similar. *See Cedar Crest Funeral Home, Inc. v. Lashley,* 889 S.W.2d 325, 331 (Tex.App.-Dallas 1993, no writ). Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representa-

tive status. *Nissan Motor Co.,* 27 S.W.3d at 582.

Appellants attack the typicality of the class representatives because several representatives either claim to have forgotten receiving a telemarketing call or deny ever having received such a call. However, the record demonstrates that appellants use a uniform script in their telemarketing practices that result in charges to class members' accounts. It is undisputed that appellants read from a uniform script to each contacted person, and that appellants' telemarketing representatives were forbidden from deviating from the script. It is also undisputed that all class members were enrolled and charged for the policies. A company representative testified at the certification hearing that if the class representatives received charges on their credit card accounts, it could be assumed that a licensed agent of appellants had enrolled them on the phone. As the claim made by the class does not allege that appellants charged the accounts of consumers without contacting and enrolling them, the matter of whether the class representatives perfectly recall the conversations in question is irrelevant to establish typicality. Clearly the representatives were enrolled, charged, and now claim to suffer the same injury as the remaining class members, thus satisfying the requirements of typicality. *See Rodriguez,* 431 U.S. at 403, 97 S.Ct. 1891; *Nissan Motor Co.,* 27 S.W.3d at 582.

Appellants' fourth issue is overruled.

### Conclusion

Having overruled all of appellants' issues, we affirm the class certification order entered by the trial court.